Rachel E. Kaufman (CA Bar No. 259353)
rachel@kaufmanpa.com
Avi R. Kaufman (*Pro hac vice*)
avi@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Attorneys for Plaintiff Judson and all others similarly situated*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JODI JUDSON,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>**GOLDCO DIRECT, LLC,** a Delaware limited liability company,<br><br>*Defendant*. | Case No. 2:19-cv-06798-PSG-PLA<br><br>**PLAINTIFF'S NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AND INCORPORATED MEMORANDUM OF LAW**<br><br>Date: Monday, June 7, 2021<br>Time: 1:30 p.m.<br>Courtroom: 6A – 6th Floor<br>Judge: Hon. Philip S. Gutierrez |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 7, 2021, at 1:30 p.m., or as soon thereafter as this matter may be heard, in Courtroom 6A, of the United States District Court for the Central District of California, located at the First Street Courthouse, 350 West 1st St., Los Angeles, CA 90012, before the Honorable Judge Philip S. Gutierrez, Plaintiff Jodi Judson, on behalf of herself and a class of similarly

situated persons will and hereby does move the Court, by and through her counsel, for entry of an order granting final approval of the class action settlement set forth in the Parties' Settlement Agreement, certifying the Settlement Class for settlement purposes, and approving the Notice to the Settlement Class.[1] This Motion is based on and supported by this Notice of Motion, the following Memorandum of Points and Authorities, the Declaration of Avi R. Kaufman, the Declaration of the Settlement Administrator, all pleadings, records and papers on file, and such other matters that may be presented to the Court.

                                        Respectfully submitted,

 Dated: May 7, 2021                     */s/ Rachel E. Kaufman*
                                        Rachel E. Kaufman
                                        Avi R. Kaufman
                                        Kaufman P.A.

---

[1] The Class Action Settlement Agreement was filed with the Court as ECF number 52-1 on November 23, 2020 (referred to herein as the "Agreement" or "Settlement Agreement"). All capitalized terms used herein have the same definitions as those defined in the Agreement.

Motion for Final Approval of Class Settlement
Case no. 4:19-cv-01057-HSG

# **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................... 1

II.   BACKGROUND .......................................................................... 2

III.   IMPLEMENTATION OF THE PROPOSED SETTLEMENT .................... 6

IV.   FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE ......... 7

    a.   The Settlement is Entitled to a Presumption of Fairness, and Is Otherwise Fair, Reasonable, and Adequate ............................................. 8

      i.   The Strength of Plaintiff's Case Compared to the Risks of Further Litigation Supports Final Approval ..................................... 9

      ii. The Risk of Maintaining Class Action Status Through Trial Supports Final Approval ........................................................... 11

      iii. The Monetary Relief Provided by the Settlement Supports Final Approval ........................................................... 11

      iv. Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case ........................................ 12

      v. Class Counsel's Experience and Views of the Settlement Support Final Approval ........................................................... 13

      vi. The Reaction of the Settlement Class Members Supports Final Approval ........................................................... 14

    b.   Notice Was the Best Practicable and Was Reasonably Calculated to Inform the Settlement Class of its Rights ................................ 15

    c.   The Settlement Class Should Be Finally Certified ................................ 16

V.   CONCLUSION ........................................................................... 19

i

Motion for Final Approval of Class Action Settlement
Case No. 2:19-cv-06798-PSG-PLA

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Barr v. Am. Ass'n. of Political Consultants, Inc.*, 140 S. Ct. 2335, 591 U.S. \_\_\_, (July 6, 2020)................................................................................4, 10

*Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015).........................10

*Creasy v. Charter Communs., Inc.*, No. 20-1199, 2020 U.S. Dist. LEXIS 177798 (E.D. La. Sep. 28, 2020)........................................................................4, 10

*Estrada v. iYogi, Inc.*, No. 2:13–01989 WBS CKD, 2015 U.S. Dist. LEXIS 137299 (E.D. Cal. Oct. 6, 2015)..............................................................................12

*Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (Apr. 1, 2021)................................4, 10

*Facebook, Inc. v. Duguid*, No. 19-511...............................................................3

*Franklin v. Wells Fargo Bank, N.A.,* No. 14cv2349-MMA (BGS), 2016 U.S. Dist. LEXIS 13696 (S.D. Cal. Jan. 29, 2016)............................................................12

*Goodwin v. Winn Mgmt. Grp. LLC*, No. 115CV00606DADEPG, 2017 U.S. Dist. LEXIS 117133 (E.D. Cal. July 26, 2017) ............................................................8

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ...............................18

*In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) .......................................................................................................9

*In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015)...................14

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) .................8

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) .......................................8

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..............11

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014)..........................................9

*Kron v. Grand Bahama Cruise Line, LLC*, 328 F.R.D. 694 (S.D. Fla. 2018).........19

*Kuck v. Berkey Photo, Inc.*, 87 F.R.D. 75 (S.D.N.Y. 1980) ...................................13

*Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507 (9th Cir. 1978) .................18

*Manouchehri v. Styles for Less, Inc.*, No. 14cv2521 NLS, 2016 U.S. Dist. LEXIS 80038 (S.D. Cal. June 20, 2016) ........................................................12

*Morales v. Stevco, Inc.*, No. 1:09-cv-00704 AWI JLT, 2011 U.S. Dist. LEXIS 130604 (E.D. Cal. Nov. 10, 2011).......................................... 10, 11

*Moshogiannis v. Sec. Consultants Grp., Inc.*, No. 5:10-cv-05971 EJD, 2012 U.S. Dist. LEXIS 16287 (N.D. Cal. Feb. 8, 2012).....................................12

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ......................15

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................... 10, 13, 14

*Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615 (9th Cir. 1982) ....................9

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009)...................................8

*Satchell v. Fed. Express Corp.*, No. C03-2659 SI, 2007 U.S. Dist. LEXIS 99066 (N.D. Cal. Apr. 13, 2007)..........................................................................8

*Swift v. Direct Buy, Inc.*, No. 2:11-cv-401-TLS, 2013 WL 5770633 (N.D. Ind. Oct. 24, 2013) ..............................................................................16

*Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125 (9th Cir. 2016)............................19

*Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222 (11th Cir. 1998)..........................15

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)...........................................17

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005)....................7

*Wannemacher v. Carrington Mortg. Servs., LLC*, No. SA CV 12-2016 FMO (ANx), 2014 U.S. Dist. LEXIS 199156 (C.D. Cal. Dec. 22, 2014) ................9, 11

*Williams v. Costco Wholesale Corp.*, No. 02cv2003 IEG (AJB), 2010 U.S. Dist. LEXIS 19674 (S.D. Cal. Mar. 4, 2010)...........................................13

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) ............18

**Statutes**

Class Action Fairness Act of 2005, 28 U.S.C. § 1715................................................6

**Other Authorities**

*Manual for Compl. Lit.* § 21.312 .........................................................15

*Newberg on Class Actions* § 11.41 (4th ed. 2002) ......................................8

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The Settlement Agreement establishes a non-reversionary Settlement Fund in the amount of $1,500,000 for the benefit of the Settlement Class.  This equates to more than $850[2] per Settlement Class Member; a truly exceptional result. Declaration of Avi Kaufman ¶ 3, attached hereto as Exhibit 1. Defendant has also agreed to effectively stop telemarketing to Settlement Class Members for at least two years.

No Settlement Class Members have opted out, and no Settlement Class Members have objected. In addition, due to the robust notice efforts, as of April 28, 2021, 1045 Settlement Class Members have submitted claims—a claims rate of approximately 8%.  If the Court grants the relief requested in this Motion, each claiming Settlement Class Member will receive more than $850.

Ultimately, the Settlement will bring an end to what has otherwise been, and likely would continue to be, hard-fought litigation centered on unsettled legal questions, provides Class Members with outstanding monetary and injunctive relief, and should be finally approved.

Therefore, for the reasons set forth in this memorandum and in the papers previously submitted in support of approval, Plaintiff respectfully requests that the Court grant final approval of the Parties' Settlement Agreement by: (1) finally certifying the Settlement Class; (2) approving the proposed Settlement Agreement as fair, reasonable, and adequate for the certified Settlement Class; and (3)

---

[2] This estimate is based on a pro rata distribution after deduction of the anticipated settlement administration costs, requested service award, and requested attorneys' fees of one-third of the Settlement Fund plus out of pocket litigation costs.

determining that adequate notice was provided to the Settlement Class. The Parties request entry of the agreed proposed order filed herewith, attached as Exhibit 2 to this Motion, at or after the fairness hearing.

## II.     BACKGROUND

On August 6, 2019, Plaintiff filed the Complaint against Goldco in this action asserting claims under the TCPA's autodialer and DNC provisions. (ECF No. 1). On September 12, 2019, Goldco answered the Complaint (ECF No. 13). The parties then participated in a Rule 26 conference and prepared a joint scheduling report and discovery plan (ECF No. 17).

Thereafter, the parties engaged in extensive written discovery involving, among other things, Plaintiff serving and responding to written discovery, multiple, extended meet and confers through which the parties were able to resolve their discovery disputes without the need for motion practice, and Plaintiff's review of tens of thousands of pages of documents ultimately produced by Defendant. Kaufman Decl. ¶ 6. Plaintiff also engaged in extensive third party discovery, resulting in, among other things, the filing of a subpoena enforcement action and the production of tens of thousands of additional pages of electronic documents relevant to this action, including the text messaging logs and CRM records used to identify Settlement Class Members. *Id*. Additionally, Plaintiff took the depositions of Defendant's Chief Marketing Officer and Defendant's corporate representative.

This discovery established that Defendant licensed from a company called Call Loop a software platform to send out automated text messages marketing Defendant's services and products as part of a sales push to reengage with leads that Defendant had collected through various websites over the years but had never transacted with. *Id*. These leads were loaded to and stored in the Call Loop platform

and text messaged automatically as part of scheduled campaigns. *Id*. In total, using Call Loop's platform Defendant (1) sent three marketing text messages to Plaintiff whose cell phone number was registered on the national Do Not Call registry ("DNC"), and (2) sent the identical three text messages to more than 13,000 other consumers whose cell phone numbers were also registered on the DNC. *Id*.

On May 6, 2020, the Parties engaged in a full-day, contentious mediation with JAMS mediator Bruce A. Friedman. *Id*. at ¶ 7. The mediation did not result in settlement, but did, among other things, involve the initial exchange of information concerning Goldco's financial condition. *Id*.

On August 18, 2020, Plaintiff served his expert witness disclosures, including the expert report of Aaron Woolfson, centering on analysis of the text message logs and CRM records to identify putative class members and whether the Call Loop platform used to send text messages to Settlement Class Members was an autodialer under the TCPA. Kaufman Decl. ¶ 8.  On October 6, 2020, Defendant took Mr. Woolfson's deposition. *Id*.

On August 19, 2020, Defendant filed a motion to stay this action pending the Supreme Court's ruling in *Facebook, Inc. v. Duguid*, No. 19-511, regarding what constitutes an automatic telephone dialing system under the TCPA (ECF No. 32). Plaintiff responded in opposition to the motion on October 5, 2020 (ECF No. 42), and Defendant filed its reply on October 12, 2020 (ECF No. 43).

On August 25, 2020, Plaintiff first filed her motion for class certification. Defendant responded on October 12, 2020 (ECF No. 49).  (The parties reached an agreement to settle the action the business day prior to Plaintiff's reply being due.)

In advance of the November 2, 2020 final pretrial conference, the parties began trial preparation. On October 12, 2020, the parties filed a joint exhibit list and

their respective witness lists and memoranda of contentions of law and fact (ECF Nos. 44-48). The next day, Plaintiff served Defendant with a proposed verdict form and jury instructions. Kaufman Decl. ¶ 10.

In parallel to the more than five months of additional adversarial litigation after mediation, the parties engaged in further settlement negotiations with the assistance of Mr. Friedman and ultimately reached an agreement in principle as to a class wide resolution, culminating in the Settlement Agreement. Kaufman Decl. ¶ 11.

The Parties recognize and acknowledge the expense and length of continued proceedings that would be necessary to prosecute the litigation against Defendant through trial and potentially appeals. Kaufman Decl. ¶ 12. Plaintiff's counsel has taken into account the strength of Defendant's defenses, the limitations of Defendant's financial ability to pay a potential final judgment, difficulties in obtaining class certification and proving liability, the uncertain outcome and risk of the litigation, especially in complex actions such as this one, the inherent delays in such litigation, and, in particular, the risk that a change in the law, including a ruling by this Court concerning the constitutionality of the TCPA or a ruling by the Supreme Court or FCC regarding what constitutes an autodialer under the TCPA, could nullify Plaintiff's claims. *Id.*; *see Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (Apr. 1, 2021); *Creasy v. Charter Communs., Inc.*, No. 20-1199, 2020 U.S. Dist. LEXIS 177798 (E.D. La. Sep. 28, 2020) (finding that TCPA claims based on calls preceding the Supreme Court's ruling in *Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 591 U.S. ___, (July 6, 2020), are not actionable because the TCPA was unconstitutional until a 2015 amendment was severed in *Barr*).

Motion for Final Approval of Class Action Settlement
Case No. 2:19-cv-06798-PSG-PLA

Plaintiff's counsel believe that the proposed Settlement confers substantial and immediate benefits upon the Settlement Class whereas continued and protracted litigation, even if successful, may have ultimately delivered none. *Id*. Based on their evaluation of all these factors, Plaintiff and Plaintiff's counsel have determined that the Settlement is in the best interests of Plaintiff and the Settlement Class. *Id*.

The Settlement Agreement establishes a Settlement Class of:

All persons within the United States who (a) received one or more text messages sent by or on behalf of Defendant with the following content: (i) "URGENT Your retirement savings is at risk from $9 TRILLION ponzi scheme. Learn how to protect yourself today. Call Now: 855-957-2233 Text STOP 2 stop," (ii) "$9 TRILLION ponzi scheme going after retirement accounts. Call to find out if your retirement savings is at risk! Call Now: 855-957-2233 Text STOP 2 stop," and (iii) "US/China tariff war could bankrupt your retirement savings. Find out if you're at risk! Call Now: 855-957-2233 Text STOP 2 stop"; (b) on their cellular telephone numbers; (c) that were registered on the National Do Not Call Registry more than 30 days before receiving any of the text messages; and (e) who are on the class list.

Agreement at ¶ 1.1.36. The Settlement Class is limited to the putative class members of the proposed class in Plaintiff's motion for class certification (ECF No. 38).

The Settlement Fund will be distributed *pro rata* to claiming Settlement Class Members. After deducting the estimated notice and administration costs, Class Counsel fees and expenses, and a Service Award from the Settlement Fund, each Claimant will receive a *pro rata* distribution of more than $850. Kaufman Decl. at ¶ 3.

The Settlement confers substantial and immediate benefits upon the Settlement Class whereas continued and protracted litigation may have ultimately delivered none given the risks presented by Defendant's defenses, the uncertainties

of contested litigation, and the everchanging TCPA landscape, including district courts' ongoing scrutiny of the constitutionality of the TCPA, and the Supreme Court's decision in *Facebook* regarding the TCPA's autodialer provision. *See* Kaufman Decl. ¶ 12.

## III.   IMPLEMENTATION OF THE PROPOSED SETTLEMENT

The Court entered its Order Granting Preliminary Approval of the Settlement on December 30, 2020. [ECF No. 53]. Both before and after that date, the Parties have worked diligently with each other and the Claims Administrator to effectuate the terms of the Settlement Agreement. Declaration of Settlement Administrator attached as Exhibit 3.

Specifically, on December 3, 2020, in accordance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA"), the Settlement Administrator sent the CAFA Notice to the United States Attorney General and all State Attorneys General.  Settlement Administrator Decl. at ¶ 11.

On November 30, 2020, the Settlement Administrator was provided an electronic list that included 13,060 records with class member identifying information. *Id*. at ¶ 12.

On January 29, 2021, Angeion launched the Settlement website and the toll-free Settlement information hotline. *Id*. at ¶¶ 17, 19.  Since that time, the Settlement website has had more than 3,211 pageviews, and the toll-free Settlement information hotline has received 193 calls.  *Id*. at ¶¶ 18, 20.

Also on January 29, 2021, Angeion initiated the mailed notice program resuting in dissemination of 12,589 Summary Notices via First Class USPS Mail to the postal addresses associated with potential Settlement Class Members. *Id*. at ¶ 13.

From January 29, 2021 through February 28, 2021, Angeion caused a custom social media campaign to commence via Facebook by posting advertisements directed to accounts associated with the phone numbers on the class list. *Id*. at ¶ 21.

In total, including efforts to remail Summary Notices that were initially returned as undeliverable, Angeion has delivered direct, mailed Summary Notices to 84.3% of Settlement Class Members. *Id*. at ¶ 16. In addition, Angeion's published Facebook ads had a reach of approximately 10,892 resulting in 943 clicks during the 30-day period, extending the Notice Plan's total reach. *Id*. at ¶¶ 21. And in response to these robust notice efforts, 1045 Settlement Class Members have submitted claims, no potential Settlement Class Members have opted out, and no Settlement Class Members have filed or otherwise submitted objections regarding the Settlement. *Id*. at ¶¶ 22-24.[3]

## IV.    FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

As a matter of public policy, courts favor settlement of class actions for their earlier resolution of complex claims and issues, which promotes the efficient use of judicial and private resources. *E.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). The policy favoring settlement is especially relevant in class actions in which the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain through a judgment. *See*, *e.g.*, *id.*; *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101

---

[3] Although Settlement Class Members were required to file objections with the Court, in an abundance of caution, all correspondence received by Angeion concerning the Settlement has been reviewed to confirm that no objections were sent to Angeion. Kaufman Decl. at ¶ 15.

(9th Cir. 2008); *see also Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).

In the Ninth Circuit, to assess the fairness of a class-action settlement there are eight factors a court may consider: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the relief provided by the settlement; (5) the extent of discovery completed and the stage of the proceedings at which a settlement was reached; (6) plaintiff's counsel's views of the case in light of their experience; (7) the presence of a governmental participant; and (8) the reaction of the absent members to the proposed settlement. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015). In assessing a settlement, a court is asked to exercise its discretion only "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). An evaluation of the relevant factors for determining whether the Parties' Settlement here is fair, reasonable, and adequate, overwhelmingly supports the granting of final approval.

### a. The Settlement is Entitled to a Presumption of Fairness, and Is Otherwise Fair, Reasonable, and Adequate

"The assistance of an experienced mediator in the settlement process confirms that [a] settlement is non-collusive." *Satchell v. Fed. Express Corp.*, No. C03-2659 SI, 2007 U.S. Dist. LEXIS 99066, at *17 (N.D. Cal. Apr. 13, 2007); *see Goodwin v. Winn Mgmt. Grp. LLC*, No. 115CV00606DADEPG, 2017 U.S. Dist. LEXIS 117133, at *20 (E.D. Cal. July 26, 2017) (finding that a settlement was

entitled to a presumption of fairness because it resulted from a full day of mediation with a mediator); *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 450 (C.D. Cal. 2014) (citing *Rodriguez*, 563 F.3d at 965) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

The Settlement in this action was negotiated with the assistance of JAMS mediator Bruce Friedman, who has extensive experience assisting parties in resolving TCPA class actions, over the course of five months commencing with a full day mediation in May 2020. Kaufman Decl. at ¶¶ 4, 7; *see In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 809 (N.D. Ill. 2015) (finally approving class action settlement with estimated payout of $39.66 per claiming class member). The Settlement is therefore entitled to a presumption of fairness. But, even without a presumption of fairness, an objective evaluation of the relevant Ninth Circuit factors for determining whether the Settlement is fair, reasonable, and adequate confirms that it is overwhelmingly so. *See Wannemacher v. Carrington Mortg. Servs., LLC*, No. SA CV 12-2016 FMO (ANx), 2014 U.S. Dist. LEXIS 199156, at *16 (C.D. Cal. Dec. 22, 2014) (discussing that a court should "objectively" evaluate the "strengths and weaknesses inherent in the litigation") (internal citation omitted).

### i. The Strength of Plaintiff's Case Compared to the Risks of Further Litigation Supports Final Approval

As the Ninth Circuit has instructed, in assessing the probability and likelihood of success, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615, 625 (9th Cir. 1982). There is "no

particular formula" to be applied, but the court may presume the parties' counsel and the mediator arrived at a reasonable range of settlement by considering plaintiff's likelihood of recovery. *Rodriguez*, 563 F.3d at 965. Moreover, "[i]t has been held proper to take the bird in hand instead of a prospective flock in the bush." *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1041 (S.D. Cal. 2015) (*citing Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)).

Plaintiff's counsel has taken into account the strength of Defendant's defenses, the limitations of Defendant's financial ability to pay a potential final judgment, difficulties in obtaining class certification and proving liability, the uncertain outcome and risk of the litigation, especially in complex actions such as this one, the inherent delays in such litigation, and particularly the risk that a change in the law, including a ruling by the Supreme Court or this Court concerning the constitutionality of the TCPA or an interpretation from the Supreme Court or Federal Communications Commission regarding what constitutes an autodialer under the TCPA, could nullify Plaintiff's claims. Kaufman Decl. at ¶ 12; *see Barr v. Am. Ass'n Political Consultants, Inc.,* 140 S. Ct. 2335; *Facebook, Inc.*, 141 S. Ct. 1163; *Creasy v. Charter Communs., Inc.*, No. 20-1199, 2020 U.S. Dist. LEXIS 177798 (E.D. La. Sep. 28, 2020).

These risks must be balanced against the extraordinary anticipated Settlement result: if the Settlement is finally approved, claiming Settlement Class Members will each receive more than $850 in immediate monetary relief. This factor therefore strongly weighs in favor of final approval. *Morales v. Stevco, Inc.*, No. 1:09-cv-00704 AWI JLT, 2011 U.S. Dist. LEXIS 130604, at *27 (E.D. Cal. Nov. 10, 2011) (immediate recovery for the class is "preferable to lengthy and expensive litigation with uncertain results") (internal citation omitted).

### ii. The Risk of Maintaining Class Action Status Through Trial Supports Final Approval

The risk that a class may not be certified also favors final approval. Kaufman Decl. at ¶ 13; *see Wannemacher*, 2014 U.S. Dist. LEXIS 199156, at *18 (finding that where motion for class certification had not been filed the risk that the class would not be certified weighed in favor of approving the settlement). Defendant opposed Plaintiff's motion for class certification and argued that consent and other defenses could not be determined on a class basis, and that, therefore, class certification was inappropriate. *See generally* ECF 49; Kaufman Decl. at ¶ 13. The risks inherent in proceeding with class litigation weigh strongly in favor of final approval.

### iii. The Monetary Relief Provided by the Settlement Supports Final Approval

In evaluating the range of possible approval, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). "Thus, when analyzing the amount offered in settlement, the Court should examine 'the complete package taken as a whole,' and the amount is 'not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators.'" *Morales*, 2011 U.S. Dist. LEXIS 130604, at *28.

The non-reversionary $1,500,000 settlement amount provides much more than "a fraction of the potential recovery" to Settlement Class Members. Class members that submit claims will each receive a monetary payout of more than $850. This is an excellent result that far exceeds the payout in most other court approved TCPA settlements. *See Manouchehri v. Styles for Less, Inc.*, No. 14cv2521 NLS,

2016 U.S. Dist. LEXIS 80038 (S.D. Cal. June 20, 2016) (preliminarily approving settlement where class members could choose to receive $10 cash or $15 voucher); *Franklin v. Wells Fargo Bank, N.A.,* No. 14cv2349-MMA (BGS), 2016 U.S. Dist. LEXIS 13696 (S.D. Cal. Jan. 29, 2016) (approving settlement where class members received $71.16); *Estrada v. iYogi, Inc*., No. 2:13–01989 WBS CKD, 2015 U.S. Dist. LEXIS 137299 (E.D. Cal. Oct. 6, 2015) (preliminarily approving TCPA settlement where class members estimated to receive $40). And in addition to providing significant monetary relief for the Settlement Class's benefit, Defendant has also agreed to effectively stop telemarketing to Settlement Class Members for at least two years.  Kaufman Decl. ¶ 3.

What the Settlement Class releases through the settlement is related to what the Class gains. In this case, the release from Settlement Class Members to Defendant is narrowly tailored to claims arising from the text messages at issue. *Id*.

The monetary and remedial relief here are a fair and meaningful outcome in Settlement Class Members' favor, placing the Settlement well within the range of approval.

### iv.  Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case

Discovery has advanced far enough to allow parties to responsibly resolve a case when the parties have exchanged meaningful evidence and information relating to the key issues in the case prior to settlement negotiations. *E.g.*, *Moshogiannis v. Sec. Consultants Grp., Inc.*, No. 5:10-cv-05971 EJD, 2012 U.S. Dist. LEXIS 16287, at *14 (N.D. Cal. Feb. 8, 2012) (holding that settlement was fair, reasonable, and adequate where, *inter alia,* "the parties conducted a significant amount of informal discovery…"); *Williams v. Costco Wholesale Corp.*, No.

02cv2003 IEG (AJB), 2010 U.S. Dist. LEXIS 19674, at *16 (S.D. Cal. Mar. 4, 2010) ("Plaintiff ha[d] sufficient information from investigation and from informal discovery to have a clear view of the strengths and weaknesses of the case and to support the settlement.").

Here, fact and expert discovery were complete with the exception of Plaintiff's deposition when the Parties reached Settlement. Kaufman Decl. at ¶ 13. Class Counsel's understanding of the key issues driving the litigation, including the likelihood of class certification, the strength of Defendant's consent and other defenses, and the ever-shifting TCPA law landscape, prepared them for well-informed settlement negotiations. *Id.* As a result, the Settlement here was the result of extensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action. *Id.*

### v. Class Counsel's Experience and Views of the Settlement Support Final Approval

Settlement recommendations of competent counsel are accorded "great weight" by courts since "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528 (citations omitted). "The Court's function on this application is well known it is not to reopen and enter into negotiations with the litigants in the hope of improving the settlement to meet an objector's particular objections; nor is the Court called upon to substitute its business judgment for that of the parties who worked out a settlement after hard, arm's-length, good-faith bargaining." *Kuck v. Berkey Photo, Inc.*, 87 F.R.D. 75, 78 (S.D.N.Y. 1980).

Motion for Final Approval of Class Action Settlement
Case No. 2:19-cv-06798-PSG-PLA

The Settlement here is the result of extensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action.  Kaufman Decl. at ¶ 13. Furthermore, Class Counsel are particularly experienced in the litigation, certification, and settlement of nationwide TCPA class action cases.  *Id*. at ¶¶ 16-22. Class Counsel zealously represented Plaintiff and the Settlement Class members' interests throughout the litigation, and continue to do so. *Id*. at ¶ 23. Class Counsel are confident in the strength of Plaintiff's case, but are also pragmatic in their awareness of the various defenses available to Defendant, and the risks inherent in obtaining class certification, and prevailing at trial and on appeal. *Id*. at ¶ 24. The success of Plaintiff's claims turn on questions that would arise at class certification, summary judgment, trial, during an inevitable post-judgment appeal, and in proceedings before the Supreme Court and FCC to which Plaintiff is not a party. *Id*. Under the circumstances, Class Counsel appropriately determined that the benefits of the Settlement outweigh the risks of continued litigation. *Id*. And the absence of any opt outs and objections from Settlement Class Members, strongly support Class Counsel's conclusion.

### vi.  The Reaction of the Settlement Class Members Supports Final Approval

A low number of opt-outs and objections is typically a factor that supports settlement approval. *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) (granting final approval where 47,336 class members submitted claims, only 57 timely opted out, and 6 filed objections); *see Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529 ("It is established that the absence of a large number of objections

to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members.").

Here, the Settlement Class unanimously endorses the Settlement. No Settlement Class Members have opted out or objected. Kaufman Decl. at ¶ 15. Accordingly, Settlement Class Members' reaction to the Settlement weighs strongly in favor of final approval.

### b. Notice Was the Best Practicable and Was Reasonably Calculated to Inform the Settlement Class of its Rights

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit.* § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt-out of the action." *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted); *see also Manual for Compl. Lit.* § 21.312 (listing relevant information).

The Notice program satisfies these criteria. As approved by the Court, the Notice Program included direct mail notice and publication notice. The notices advised Settlement Class members of the substantive terms of the Settlement, their

15
Motion for Final Approval of Class Action Settlement
Case No. 2:19-cv-06798-PSG-PLA

options for remaining part of the Settlement Class, for objecting to the Settlement or to Class Counsel's Attorneys' fee application and request for Service Award, and for opting-out of the Settlement, and how to obtain additional information about the Settlement.  Kaufman Decl. at ¶ 25.  Direct mailed notice alone reached 84.3% of the Settlement Class and the tailored publication notice program added to that reach. Settlement Administrator Decl. at ¶¶ 16, 21.  Such a percentage exceeds established due process requirements for class notice. *See* Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (2010), *available at* https://goo.gl/KTo1gB (instructing that notice should have an effective "reach" to its target audience of 70-95%. ); *see also Swift v. Direct Buy, Inc.*, No. 2:11-cv-401-TLS, 2013 WL 5770633, at *3 (N.D. Ind. Oct. 24, 2013) ("The Federal Judicial Center's checklist on class notice instructs that class notice should strive to reach between 70% and 95% of the class.") As a result, the notice to the Settlement Class was the best practicable notice, because it was intended to, and in fact did, inform the Settlement Class of its rights.  Kaufman Decl. at ¶ 25; Settlement Administrator Decl. at ¶ 25 ("In my professional opinion, the Notice Program described herein met the requirements of Rule 23 and due process requirements as the best notice practicable under the circumstances, utilized virtually every available Class Member phone number to provide notice and incorporated best practices to alert and engage the participation of the class members in the proposed Settlement").

### c.  <u>The Settlement Class Should Be Finally Certified</u>

This Court conditionally certified the Settlement Class for settlement purposes only. [ECF No. 53]. For all the reasons set forth in Plaintiff's preliminary approval briefing, incorporated by reference herein, and the Preliminary Approval

Order, the Court should finally certify the Settlement Class as it continues to meet all the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).

Specifically, the numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of approximately 13,060 people, and joinder of all Settlement Class Members is impracticable. Kaufman Decl. at ¶ 26; *see* Fed. R. Civ. P. 23(a)(1).

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted). Here, the commonality requirement is readily satisfied. Kaufman Decl. at ¶ 27. There are multiple questions of law and fact that are common to the Settlement Class that would generate common answers. *Id*. For the autodialer claim, the primary issue to be determined is whether the Call Loop platform used to send all 3 of the text messages to all of the class members constitutes an automatic telephone dialing system under the TCPA, which is a common question that will be resolved based on Goldco's and Plaintiff's expert's testimony. For the Do Not Call claim, the primary issue to be determined is whether each Goldco's 3 text messages that each class member received constitute telemarketing, which is also a common question that will be resolved based on Goldco's testimony. *Id*.

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent class members such that the Rule 23(a)(3) typicality requirement is satisfied. The typicality requirement ensures that "the interest of the named

Motion for Final Approval of Class Action Settlement
Case No. 2:19-cv-06798-PSG-PLA

representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).  Typicality is present when a defendant acts uniformly toward the class members, where that uniform conduct results in injury to the class members, and where the named plaintiff suffers a similar injury to that of the class members as a result. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Plaintiff is typical of the Settlement Class Members because her claims and the class's claims arise from Goldco's single course of conduct and are based on the same legal theories. Plaintiff has the same two TCPA claims as all other Settlement Class Members who were sent the same 3 texts by Goldco as part of the same campaign.  Kaufman Decl. at ¶ 28.

Plaintiff and Class Counsel also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) requires (1) a plaintiff's attorney to be qualified, experienced, and generally able to conduct the proposed litigation; and (2) a plaintiff to not have interests antagonistic to those of the class.  *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).  Plaintiff has no antagonistic or conflicting interest with the members of the proposed class. To the contrary, she has demonstrated her commitment to the class by actively participating in the litigation. She has worked with counsel to develop the class claims, responded to requests for production and interrogatories, and was prepared to be deposed. Kaufman Decl. at ¶ 28; Declaration of Jodi Judson at ¶¶ 3-7 (ECF No. 54-3). Further, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions, and TCPA class actions, in particular.  *Id*. at ¶¶ 16-22.  Class Counsel have vigorously litigated this action and will continue to vigorously prosecute this matter through completion. Kaufman Decl. at ¶ 23.

18
Motion for Final Approval of Class Action Settlement
Case No. 2:19-cv-06798-PSG-PLA

Rule 23(b)(3)'s predominance requirement tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016) (internal citation omitted).  The Settlement Class readily satisfies the Rule 23(b)(3) predominance requirement because the questions common to all Settlement Class Members – including whether Goldco's text messages were sent for marketing purposes; whether Call Loop's platform used to text message all Settlement Class Members constitutes an autodialer under the TCPA; whether Goldco sent text messages to telephone numbers on the DNC; and whether Goldco had consent to send the text messages – focus on Defendant's conduct and can be resolved based on common evidence, including Defendant's records, Defendant's employees' testimony, and Plaintiff's expert's testimony. Kaufman Decl. at ¶ 29.

Relatedly, the Settlement Class satisfies Rule 23(b)(3)'s superiority requirement because "common issues of law and fact predominate over any individualized issues" and "the large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that a class action would be the superior method of adjudicating" Plaintiff and the Settlement Class's "claims under the TCPA." *See id.*; *Kron v. Grand Bahama Cruise Line, LLC*, 328 F.R.D. 694, 702 (S.D. Fla. 2018).

For these reasons, the Court should certify the Settlement Class.

## V.    CONCLUSION

The Settlement securing $1,500,000 in immediate monetary relief represents an excellent result for the Settlement Class given the risks and obstacles in this Action. Moreover, each Settlement Class Member submitting a claim is anticipated

to receive more than $850. The Settlement more than satisfies the fairness and reasonableness standard of Rule 23(e), as well as the class certification requirements of Rules 23(a) and (b)(3).  Accordingly, for the foregoing reasons, Plaintiff and Class Counsel respectfully request that this Court (1) grant Final Approval to the Settlement; (2) certify for settlement purposes the Settlement Class; (3) appoint as Class Representative the Plaintiff, Jodi Judson; (4) appoint as Class Counsel Avi R. Kaufman and Rachel E. Kaufman of Kaufman P.A.; and (6) enter Final Judgment.

Respectfully submitted,

Dated: May 7, 2021

*/s/ Rachel E. Kaufman*
Rachel E. Kaufman
rachel@kaufmanpa.com
Avi R. Kaufman
avi@kaufmanpa.com
Kaufman P.A.
400 NW 26th Street
Miami, Florida 33127
Telephone: (305) 469-5881

*Counsel for Plaintiff Judson and all others similarly situated*

20